Thank you, Your Honor. May it please the Court, my name is Richard Rubin, and I'm here today representing the Plaintiff Appellant, Sarah McIvor. The Court below dismissed the amended complaint here on the basis, under Rule 12c, on the basis of two factual determinations that it made. It was highly improper. Each of the two factual determinations it made to each of the two issues are, under established law, questions of fact. In addition to that, the amended complaint presented specific allegations that specifically brought into question and proposed the counterfactual of the conclusion that the Court reached. The Court's action is completely at odds with Rule 12 practice and must be reversed on that basis alone, in addition to several errors of law that I'll mention in a moment. The first issue that the Court decided was the question of applying the in-connection-with-the-collection-of-any-debt prong of the Fair Debt Collection Practices Act. This language appears in several provisions of the FDCPA. We're dealing, of course, with Section 1692e and subsection 8 of that provision, in which all activities, all prohibitive activities under 1692e must occur in connection with the collection of the debt. The first thing the Court did was, in addition to not waiting to see what the facts would show, but the first thing the Court did, again the error of law, was applied one case with different language from Section 1692gb, which dealt with the question of actual attempts to collect debt. That is not what we're dealing here in 1692e. Secondly, the rule of the case law of what it means to be in connection with the collection of a debt has been addressed and established unanimously by three circuit courts. Everyone agrees that the in-connection-with language does not require, specifically does not require an attempt to collect a debt, which is what the Court said was not alleged, which is exactly right. That's not the standard. In connection with the collection of debt under the Geberich decision and the Gerben decision from the Sixth and Seventh Circuits, also adopted by the Third Circuit and Simon, is merely that the activity be, literally, plain language of the statute, in connection with the collection, which these courts have held, does not require, expressly says, does not require a direct collection attempt, but merely activity which makes the ultimate collection of debt more likely to occur. And that is precisely what happened here, and that's why Congress put Section E-8 into the FDCPA. Communicating a debt collector, not a creditor, a debt collector, a person whose only job is to collect a debt, who reports that debt to a credit bureau as a defaulted debt in collection, as occurred here, is acting in connection with the collection of the debt. There is not a single authority anywhere that controverts that. The defendants in this case cited two cases in which courts, on summary judgment, which is most important, is to have a record, but two cases in which creditors, not debt collectors, creditors have a number of reasons to deal with credit bureaus. Debt collectors have a single reason, and that, they have a single reason to act, to collect the debt, and that was what was going on here. The second issue that the court decided was the substantive provision of E-8. E-8 expresses with three other provisions of the FDCPA. Congress's determination, and which goes back to the first point, Congress put four provisions in the FDCPA that deals expressly with regulating credit reporting by debt collectors. The idea that debt collection is not in connection with the collection of the debt is fanciful, and the decision by the court below, as a matter of law, to make that ruling is totally improper. But on the E-8 provision itself, Congress, as it did in the Truth in Lending Act, as it did in the Fair Credit Reporting Act, and in different language, different standards, but the general proposition in E-8 is reflected in three different titles of the Federal Consumer Credit Protection Act, and that is that a person reporting to a credit reporting agency a debt that it knows is disputed by the consumer must always disclose that the debt is disputed. Was there any allegation that CCS knew prior to the 12th that it was disputed? No, not at all. No, that's the point. That's the question of issues like the Brady case, the First Circuit. Isn't that basically fatal? I mean, in Wilhelm, didn't we say that it had to be false, deceptive, or misleading? And so if there's no allegation that they knew that it was disputed, how could it be false, deceptive, or misleading? Because of the allegation in the complaint, paragraph 18 of the amended complaint, that the omission of the credit bureau, TransUnion, and caused... How could it mislead TransUnion? It's undisputed. TransUnion knew. There are different reasons why Congress put this dispute requirement in. Let me answer it. First off, is it undisputed that TransUnion knew that it was disputed? It is undisputed, yes. TransUnion knew the consumer disputed the debt. So now tell me how it could be false. Because it was not, it was not that dispute. Contrary to the plain language of the statute, the debt collector here did not echo back that dispute. Now you say, well, why would that be required? Why is that misleading? And we have at least three or four different reasons and authorities that say that. The fact is... Yeah, but those are all cases under a different statute. But they go to the factual... This is, again, we're not saying that they were required under the Credit Reporting Act or under the Truth in Lending Act to make this disclosure. The because we've alleged, and the public record facts are overwhelming, that had they done so, they would have branded the credit report trade line as disputed and that would have raised Ms. McIvor's credit score. It happens to be as... If I recall right, they dispute whether you pled that there was some change or lack of change to the credit. Well, that's a factual issue. We allege... No, it's not. It's either in there or it's not. Well, we allege the impairment of her credit standing, paragraph 18. The overwhelming fact, the Fourth Circuit opinion in Saunders. I mean, there's the Federal Reserve Board Federal Trade Commission report to Congress that we cited that has, in a footnote that we cited, that repeats the fact, which will be in the public realm, that the absence of that echoing back doesn't... Of course, they know. They always know it. The Credit Bureau always knows the consumer disputes, but the failure, the omission here to follow the mandate... Why does the Credit Bureau always know that it was disputed? Well, in a dispute situation, I'm sorry. No, they may not know that at the beginning of a... If the consumer... Yeah, exactly. If the consumer makes the report, they know, but not before that. Yes, but when you look at cases like the Siemens case in the Third Circuit and the Saunders case in the Fourth Circuit, the Credit Bureau's always knew. They did know. And... So let me come back. Maybe you can clear it up for me. CCS doesn't know that it's disputed. They reported to Trans... Or they reported to TransUnion, who does know it's disputed. Tell me again where the fraud, deception, and misleading is. The misleading is a... Deception is a matter of fact that we have promised to prove. If we can't prove it, we lose on remand. No question about it. But if we can prove that TransUnion, as a result of this omission, failed to take action that adverse... That it would have taken, had it known. It was misled into not branding the trade line as disputed. That is uncontroverted as well. They would... The allegation is. They would have branded the trade line as disputed. And that would have... And that would have neutralized that negative on her credit report. That is what we will prove on remand. And if we don't, we lose. That's... That could well be. That may be the fact. Did they rebrand it? Oh, yes. Apparently. Again, we don't know this for sure. But it seems it's not in the record. Well, there is an affidavit from the defendant that says that a few days later they did rebrand. And we think that... Wouldn't the failure to rebrand be TransUnion's problem and not CCS's problem? Not as a matter of proximate cause? Well, if the evidence is that they knew or if the... I think even the allegation is that TransUnion knew at the time, why is that CCS's fault? Because the fact that that's the difference between this... This is a credit reporting practice. Again, that... Take a look at the... It's a little arcane, I know. But the Federal Dispute... It discusses the fact, and it is a fact, that credit bureaus who know from the consumer that the trade line is disputed do nothing. They allow the consumer a hundred-word dispute notation that's worthless in a credit scoring system. But if they know from the reporter, from the furnisher, that it is disputed, that they will neutralize the negative impact of the Federal Reserve Board study. And that's what's at stake here. And that's why it's so important. This decision below... This is... Again, we haven't even talked about the judicial activism of the court below in refusing to follow the disclosure requirement mandated by Congress. Didn't the court think the plea was insufficient, probably? Not really. No, it never said that the claim was insufficient. That's our case. That is our pleading standard. No one has ever suggested that it's implausible of what we're talking about here. The court just said, I don't understand why this is important. And it turns out it's very important. And whether... And both holdings of the court below, in connection with and the E-8, which is in a reported opinion, needs to be corrected. We need to get the law straight here. It's very important for the operation of the consumer financial industry. Does it matter that three days later, CCS sent a... Apparently, they claim it's five days later. And it matters tremendously for their bona fide error defense, which they will be asserting on remand, apparently. I mean, they've asserted it. And that... It may well be. That's the other possibility. There are many ways the plaintiff can lose in this case. And one of them is the bona fide error defense, which... Is it your position that the statute mandates collectors to specify that the subject every single debt-related communication it has with any person? With... Well, not that... Reporting of credit information, but yes. It just needs to become... Has to be disclosed. Just boilerplate. Just stamp it on everything. Yes. And in fact, it is. Even when there's no allegation that they knew it was disputed? No, no. They have to know. It has to be known to be disputed, but not from the consumer. That's the point here. The addition of the language to the statute that the consumer tells them. Under the Fair Credit Reporting Act, it says very clearly... Any allegation that CCS knew... From TransUnion. That it was disputed at the time it made its initial... Yes. Oh, it was absolutely. They admitted in their own affidavit. They submitted that the court didn't... The lower court didn't resolve on the bona fide error. They admitted that they knew it was disputed because TransUnion told them. And they said that five days later, they were able... They meant to brand it disputed, and they put it into the system. And once it's in the system, it doesn't... It's computer to computer. It will always be dealt with as disputed. But yes, they knew. They admit they knew. That's the reason for their bona fide error defense. But I will reserve... Thank you, Your Honor. Thank you. Okay. Mr. Ponis. Thank you, Judge. May it please the court and counsel, I am Russell Ponisa, and I represent the appellee, Credit Control Services. Two points, Your Honors. As framed by the amended complaint, Sarah MacGyver's claim against credit control does not fall within the FDCPA. And as framed by Sarah MacGyver's complaint, the at issue conduct of credit control does not violate the FDCPA. Not everything a debt collector says is a communication in connection with the collection of a debt. That's not the law, and that's not the bright line rule. If that were true, all that would be required would be to show that we are a debt collector. It's more than that. It's a common sense inquiry based on the context of the communication as to whether an animating purpose of credit control's actions was to collect the debt. But in reporting a debt to a reporting agency, I mean, isn't there some coercive effect that that's going to hurt the client's credit rating, and therefore there's an incentive to pay, that sort of thing? Yes. As recognized by both the FDCPA and the FTC, Your Honor, that's true. This is not a credit reporting activity. This is a debt verification in response to a notice of dispute notification from a credit reporting agency. A big difference. The big difference drawn by the district court in EDA, which in part the district court relied on, Your Honor, and significantly not an initiating activity on behalf of credit control to report a debt to collect it. It was a response to a dispute notification, Your Honor, and in that context, it's not an animating purpose in an attempt to collect the debt. What's your best authority for that? The best authority, Your Honor, is the bright line rule itself established in Gurdon, that an animating purpose of the conduct must be to collect the debt or to make the debt more likely to occur. In the other decisions, including Gerbeck, Your Honor, the courts talk about the context. Who is the communication between? Who initiated the communication? And what was the response? Why was the response given? Here the response was given, Judge Murphy, because the FCRA required it. It was a statutory required communication triggered by Ms. MacGyver notifying TransUnion of her dispute. In that context, Your Honor, it's not an attempt to collect a debt. And it's a completely different context, Your Honor, that's governed exclusively by, well, not exclusively, because to your point, Judge Grinder, there are reporting activities that fall within the FDCPA, but this narrow context is all FCRA. And to rely on Siemens and the Saunders decision and the Simon decision, as the bench has pointed out, they're all FCRA decisions because that's the framework and that's the Congressional Act that governs this particular conduct at issue, not the FDCPA. And E-8 and Willem say, Your Honor, what I think the court established early on is that there's no false or deceptive or misleading statement by credit control where credit control did not know itself before the communication came in that the debt was disputed. I'm glad that's been established. The only way credit control knew of the dispute was being told so by TransUnion. In the context of that communication, I'm telling you the debt is disputed. We acknowledge that dispute. We put it in our records. So they argue that TransUnion won't make the change unless the collection, or I assume the source of the debt, reports it as being disputed and that therefore by not acknowledging immediately, or at least maybe arguably for five days after, I guess, being told by TransUnion that it was disputed, that that caused the credit report to reflect that it was not disputed for some period of time and therefore that's false and misleading. I think that's their argument. Can you respond to that? It is, Your Honor. Several responses. First, it's outside the record. Those specific facts weren't pled. But secondly, that's in fact the conduct the FCRA governs, Your Honor. To say that we had to say back, it's disputed. Yes, it's disputed. That's where you step to the FDCPA and say, was it in that context a deceptive, misleading, or false representation? And I would turn, and I think the Court was right, it is fatal for us not to have known independently from the consumer that the debt was disputed. By its very terms, Section 1692E8 says the failure to communicate credit information which is known or which should be known to be false, including the failure to communicate that a debt is disputed, is the violation. We did not know, independent of TransUnion telling us it was disputed, Your Honor. That's now been established and cleared up in the record here today. In that context, because Wilhelm really does what I think the FDCPA does in E8, it's applied to fraud analysis. Was there an omission of a material fact in that communication? The material fact is the debt is disputed. Ms. McGiver told TransUnion that material fact, I dispute the debt. TransUnion knew that material fact, the debt was disputed. TransUnion told Credit Control that material fact, the debt is disputed. That material fact was part of the communication between TransUnion and Credit Control. That's the analysis that Judge Doty applied. That's the analysis that Chief Judge Davis applied in a similar related case, the Sorrento matter, which has been briefed in our submissions, Your Honor, and which, by the way, same plaintiff's counsel has not been appealed to this court and is now binding, at least on the parties to that proceeding. So because that material fact, the disputed debt, was part of the communication with Credit Control, there was no false, deceptive, or misleading communication. That fact was not omitted from that communication. The dispute of the debt was inherent and present, full force, in that communication between the parties, Your Honor. The District Court also did not find and then excuse a violation of the FDCPA. That's not what went on here. The District Court found no violation of the FDCPA and it did so as framed by Ms. McGiver's amended complaint, Your Honors. If that's the problem here, then it's that not an FDCPA claim against Credit Control because that's the act of Congress that governs this. That's the act that says, here's how this exchange is supposed to occur. Here's how what the parties are supposed to do during the course of that exchange. And if you don't, then you're subject to liability under the FCRA. And so there's no ill or harm that's going to befall the country because of this decision. The FCRA is fully equipped and does so every day to control and monitor and govern and regulate and enforce the context of this communication, Your Honors. So as framed by the amended complaint, which is the record here, the District Court followed the act in the case law in finding that Credit Control's FCRA required response. And that again, the McGiver's amended complaint describes the animating purpose of Credit Control's response. It says it was responding to an FCRA investigation. It doesn't plead that we were collecting a debt at that instance. It pleads what was happening. It pleads the actual reality. Credit Control was responding to a dispute notification under the FCRA. And under that context, given the material facts that both sides of that communication knew, the court said that cannot reasonably be interpreted as deceptive or misleading as TransUnion already knew the debt was in dispute. I've already addressed the actual language of the statute itself, 1692E8, and why it doesn't apply because Credit Control did not know it was false, that the debt was disputed. TransUnion told it so. Okay. And once it knew, when Credit Control reported, and I agree with Your Honor that that reporting activity does fall within the rubric of whether it's in connection with the collection of a debt, it reported the debt as disputed as it was required to do by the FCRA in the first instance and by the FDCPA in the second instance. Because now you have Credit Control initiating a communication. There's no one on the other side that's already saying it's disputed. And when Credit Control initiates that communication and reports that debt, Credit Control says to TransUnion it's disputed. And that is in the record. It's actually in the answer and because we're in a... Does it matter that it took five days to do that? No, Your Honor. It's not really even matter to Credit Control's position here today on the merits, Your Honor. I know the court got into it, so I wanted to address it and it is part of the record. But the merits really turn on in the first instances. Is this conduct the FDCPA governs? And if so, did this conduct violate the FDCPA? And in that, I turn back to Wilhelm, Your Honors. And Wilhelm was this very same fact pattern to some degree in that one of the debt collectors, Wilhelm, did not know the debt was disputed. And in that context, this court said there's no violation. There's no evidence in the record that that debt collector knew that debt was disputed. And so we're not saying that when they reported, they violated the FDCPA. Now, the corollary holding in Wilhelm was, of course, that there's no affirmative duty to report once you learn that the debt is disputed. But really, that just fits right here. When Credit Control did act affirmatively, we reported the debt is disputed. There's also the In re Benson decision. It's just also guiding principles. I think this court should turn to. The court dismissed an FDCPA claim against a debt collector stating, it is nowhere alleged that when it furnished the information about the debt, the collector knew of any dispute. And the attempt in that case to rely on the FCRA does what's happening here. Conflates the law, judges. It just does. You can't take FCRA and transpose it into FDCPA. It just doesn't work. And that's why Seaman, and they're really cited as opposite cases by MacGyver in her appeal for that first principle, opposite cases from a completely different act. I'm not following that, nor does it provide this court with the reasoning necessary or the authority required to reverse the district court, which did consider all of the evidence and noted even in argument with counsel that the fact that this was not known by credit control was a key issue. That wasn't the case as Judge Doty said it to the, to counsel in oral argument. That's not the case you have here. You don't have that case where credit control knew. If so, I would agree with Mr. Rubin. It's a case for trial. Here it's not because that context didn't occur. And that's only as to the FDCPA violation. Again, I mentioned Seamans and Saunders and Simon as all being FCRA cases, your honor. And let me just briefly address then a little bit of the policy and purpose behind the FDCPA, because I think it is instructive. Both the letter of the FDCPA is followed and the purpose and policy behind the FDCPA was followed as well. And it's first, as this court has said, it's not to be a sword. It's to be a shield to credit control to harm Ms. MacGyver in the course of that exchange with the transunion. She triggered the transunion dispute. Credit control followed its practices, followed the FCRA. And when credit control then affirmatively acted, now knowing because transunion disputed it in the context of another communication, it did report the debt as disputed, your honor. I think EDA is instructive to the court. There's not a whole lot of law on this narrow verification issue. So I think you're left to general principles as to what should be within the FDCPA and what should not be within the FDCPA. And there's really no reason to contort and stretch the FDCPA to fit this circumstance because it's already well governed and well provided for within the FCRA. I will jump to my conclusions, your honor, because I don't want to go past my time with the court and finish with this. No court has found that what credit control did is a violation of 1692E8 of the FDCPA. No court. The district court followed the letter and purpose of the FDCPA in finding no violation of 1692E8 in the context of this dispute notification exchange between transunion and credit control. The district court also ruled consistent with the act and the case law that the communication between transunion and credit control fell outside of 1692E8. And counsel makes much of the point that it's E8 is so much broader than what EDA used, which is a different provision, arguably. EDA was a cease collection provision. E8 is in connection with debt collection. But there's one very important part of both of those. It's got to be debt collection. So it has to be in animating purposes to collect the debt. And as pled, and I know I keep going back to that, because I think that's fair to the district court. The record is the amended complaint. And the record's not what it is as they want it to be now in their appellate briefs. And so the district court did what Rule 12C requires. It closed the pleadings with the amended complaint and with the answer. And it stared down those five facts in six paragraphs, nine through 14 of the amended complaint. And it said on that record, your honors, it's outside the FDCPA and it's not a violation because nothing that credit control knew to be false was said and nothing that credit control knew needed to be said was omitted. And for that reason, I thank the court for its time and request that the district court's opinion be affirmed in its entirety. Thank you. Thank you. And Mr. Rubin, how much time does he have? One minute, 42 seconds. Thank you, your honor. Well, we just heard the most important thing here. They just said that credit control knew that the debt was disputed from TransUnion. That's what E8 says. Information that is a debt that is known to be disputed. That's what the Brady case said in the First Circuit. That's what the Federal Trade Commission said. You have to tell somebody who already knows. Because this is the factual issue. We will show that it is critical. You ask why? It's critical that they know. It may seem superfluous using the language from Saunders' Fourth Circuit, but it isn't. It may seem, was it counterintuitive? You're relying on things outside of your pleadings, aren't you? Oh, no. No, not at all. I mean, this is the proof that we'll be, we didn't make a proffer of proof. We weren't asked for one, frankly. But the pleadings plead, paragraph 18, impairment of credit opportunity, impairment of credit standing. That's what this is all about. No, that's not, that's a red herring in the responsive brief that there's no question that public record information that's available out there to preview the evidence. Your pleadings plead why you have to tell somebody something they already know. Yes, absolutely. What paragraph? 18. I'll look at it. Please. The question, an animating purpose must be collection. They said it's not our animating purpose. That is a factual issue. That's what the Ruth case from the Seventh Circuit says. The, whether the, the in connection with, uh, uh, phraseology is a factual issue. That's the Ruth decision. Um, and whether it's misleading under your decision in Henningsen is a third party misleading, is a question to be cited on summary judgment. And we will prove it on summary judgment. And thank you very much, Your Honors. Thank you all for your arguments. That concludes our oral, the oral portion of our calendar for the day being recessed until tomorrow at nine o'clock.